Nelson Mullins Riley & Scarborough LLP
CRISPIN L. COLLINS (SBN 311755)
crispin.collins@nelsonmullins.com
19191 South Vermont Avenue, Suite 900
Torrance, CA 90502
Telephone: 424.221.7400
Facsimile: 424.221.7499
Email: crispin.collins@nelsonmullins.com

Attorney for Plaintiff
AKZO NOBEL COATINGS INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

Akzo Nobel Coatings Inc.,

Plaintiff,

vs.

GMP Cars, LLC and Geoffrey M. Palermo,

Defendant.

Case No. 4:21-cv-03359-YGR

*Assigned for all purposes to Hon. Yvonne Gonzalez Rogers*

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT GMP CARS, LLC AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

[Filed concurrently with Declaration of Peter A. Drucker in support thereof]

Hearing Date: February 15, 2022
Hearing Time: 2:00 p.m.
Hearing Location: Courtroom 1

Complaint filed: May 5, 2021



NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
LOS ANGELES

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 15, 2022 at 2:00 p.m., or as soon thereafter as this matter can be heard before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1 of the United States District Court for the Northern District of California, located at Ronald V. Dellums Federal Building & United States Courthouse 1301 Clay Street, Oakland, California 94612, Plaintiff Akzo Nobel Coatings Inc. will and hereby does move this Court for entry of a default judgment against Defendant GMP Cars, LLC ("GMP") in the amount of Three Million Two Hundred and Fifty Thousand Dollar ($3,250,000.000) plus prejudgment interest at a rate of seven percent (7%) per annum under Ga. Code Ann. § 7-4-2.

The Motion is made on the grounds that GMP has failed to appear or otherwise respond to the Complaint within the time prescribed by the Federal Rules of Civil Procedure and that the Clerk of the Court has entered a default in this Action.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Peter A. Drucker filed concurrently herewith, all papers on file with the Court, and all evidence and argument presented at or before the hearing on this Motion.

Dated: January 6, 2022

Respectfully submitted,
NELSON MULLINS RILEY & SCARBOROUGH LLP

By: */s/ Crispin L. Collins*
Crispin L. Collins

Attorneys for Plaintiff
Akzo Nobel Coatings Inc.

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

I. INTRODUCTION .......... 6
II. RELEVANT FACTUAL BACKGROUND .......... 6
III. LEGAL STANDARD .......... 8
IV. ANALYSIS .......... 9
A. This Court Has Subject Matter Jurisdiction. .......... 9
B. Service of Process on GMP Was Adequate. .......... 10
C. The *Eitel* Factors Support Entry of a Default Judgment. .......... 11
1. Possibility of Prejudice to Plaintiff .......... 11
2. Merits of the Claims & Sufficiency of the Complaint .......... 11
3. The Sum of Money at Stake in the Action .......... 12
4. Possibility of Dispute .......... 13
5. Possibility of Excusable Neglect .......... 14
6. Public Policy in Favor of Deciding the Merits .......... 14
7. Conclusion regarding the *Eitel* Factors .......... 14
D. Remedies .......... 14
1. Damages .......... 15
2. Prejudgment Interest .......... 15
V. CONCLUSION .......... 16

# TABLE OF AUTHORITIES

**Cases**

*Adobe Sys. Inc. v. Acheampong*, No. 17-CV-02749-CW (RMI), 2019 WL 7212311 (N.D. Cal. Sept. 24, 2019), report and recommendation adopted, No. 17-CV-02749 CW (RMI), 2019 WL 7212310 (N.D. Cal. Oct. 10, 2019) .......... 9

*Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388 (9th Cir. 1988) .......... 8

*Alkmeon Naviera, S.A. v. M/V Marina L*, 633 F.2d 789 (9th Cir. 1980) .......... 15

*Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290 (N.D. Ga. 2015) .......... 12

*Canadian Nat. Ry. Co. v. Phoenix Logistics, Inc.*, No. 11–cv–04589–EMC, 2012 WL 1376978 (N.D. Cal. Apr. 19, 2012) .......... 13

*Clark v. Aaron's, Inc.*, 914 F. Supp. 2d 1301 (N.D. Ga. 2012) .......... 12

*Cold Smoke Capital, LLC v. Gross*, 2014 WL 12558852 (C.D. Cal. 2014) .......... 15

*Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261 (9th Cir. 1992) .......... 9

*Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038 (N.D. Cal. 2010) .......... 9, 15

*Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) .......... 8, 11, 12, 13, 14

*Federal Nat. Mortg. Ass'n v. George*, No. 5:14–cv–01679–VAP–SP, 2015 WL 4127958 (C.D. Cal. July 7, 2015) .......... 14

*In re Tuli*, 172 F.3d 707 (9th Cir. 1999) .......... 8

*Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894 (9th Cir. 2006) .......... 10

*Kloepping v. Fireman's Fund*, No. 94–cv–2684–TEH, 1996 WL 75314 (N.D. Cal. Feb. 13, 1996) .......... 8, 11

*Lortz v. Connell*, 273 Cal. App. 2d 286 (1969) .......... 12

*Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365 (1978) .......... 10

*Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083 (N.D. Cal. 2008) .......... 8

*PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431 (C.D. Cal. 1999) .......... 9, 11, 12, 13, 14

*Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583 (2008) .......... 12

*Phillip Morris USA Inc., v. Castworld Prod., Inc.*, 219 F.R.D. 494 (C.D. Cal. 2003) .......... 9

*Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995 (N.D. Cal. 2001) .......... 9

*Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915 (9th Cir. 1987) ................................................ 15

*United States v. Broaster Kitchen. Inc.*, No. 2:14–cv–09421–MMM, 2015 WL 4545360 (C.D. Cal. May 27, 2015) ................................................ 13

*Walters v. Statewide Concrete Barrier, Inc.*, No. 3:04–cv–02559–JSW, 2006 WL 2527776 (N.D. Cal. Aug. 30, 2006) ................................................ 13

*Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072 (C.D. Cal. 2012) ................................................ 14

**Statutes**

28 U.S.C. § 1332 ................................................ 8

28 U.S.C. § 1332(a) ................................................ 8

28 U.S.C. § 1332(c)(1) ................................................ 9

Cal. Civ. Code § 3289 ................................................ 14

Cal. Civ. Code § 3289(b) ................................................ 12

Cal. Code Civ. Pro. § 415.50(a) ................................................ 9

Cal. Code Civ. Pro. § 415.50(b) ................................................ 9

Cal. Gov.'t Code § 6064 ................................................ 9

Fed. R. Civ. P. 4(e) ................................................ 9

Fed. R. Civ. P. 54(c) ................................................ 8

Fed. R. Civ. P. 55(a) ................................................ 7

Fed. R. Civ. P. 55(b) ................................................ 7

Ga. Code Ann. § 7-4-2 ................................................ 5, 12, 15

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
LOS ANGELES

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
LOS ANGELES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On May 5, 2021, Plaintiff Akzo Nobel Coatings Inc. ("Akzo Nobel") initiated the instant action against Defendants GMP Cars, LLC ("GMP") and Geoffrey M. Palermo ("Palermo") for, among other things, breach of contract. (*See* Dkt. 1.) GMP and Palermo were each duly served but have failed to appear in this action. Accordingly, the Clerk of the court entered defaults against GMP and Palermo on, November 24, 2021 and June 29, 2021 respectively. (Dkt. 23 and 15.) Neither GMP nor Palermo has responded to the Complaint. As such, default judgments are now appropriate. Akzo Nobel seeks a judgement awarding damages in the sum of $3,250,000.00 plus prejudgment interest at a rate of 7% per annum under Ga. Code Ann. § 7-4-2.

## II. RELEVANT FACTUAL BACKGROUND

Akzo Nobel manufacturers car refinishes and coatings including the Sikkens brand paint products (the "Paint Products"). (*See* Declaration of Peter A. Drucker (Drucker Decl.) at ¶ 1.) GMP is a former client of Akzo Nobel that owned and operated ten automotive collision repair and refinishing facilities throughout California. (*Id.* at ¶ 2.) At all times relevant to this action, Palermo owned GMP. (*Id.* at ¶ 3.)

In 2018 and 2019, Akzo Nobel, GMP, and Palermo entered two contracts: the GMP Supply Agreement and the Team Ride Share Supply Agreement. (*See* Drucker Decl. at ¶¶ 4, 6.) Under the GMP Supply Agreement, Akzo Nobel Agreed to and did advance to GMP a pre-paid discount of Three Million Dollars ($3,000,000.00). (*See id.* at ¶ 4 (Section 5. A.).) In exchange for this advance, GMP agreed to purchase at least Twenty Million Seven Hundred Sixty-Nine Thousand Six Hundred Fifty-One Dollars ($20,769,651.00) of the Paint Products during the seven-year term of GMP Supply Agreement (the "First Term Purchase Commitment"). (*See id.* at ¶ 4 (Section 2.).) Further, GMP agreed to return the entire $3,000,000.00 advance if the contract terminated and, at that time, GMP had purchased 60% or less of the First Term Purchase Commitment, i.e., Twelve Million Four Hundred Sixty-One Thousand Seven Hundred Ninety-One Dollars ($12,461,791.00) of the Paint Products. (*See id.* at ¶ 4 (Section 8. B.).)

Similarly, under the Team Ride Share Supply Agreement, Akzo Nobel advanced to GMP a

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
LOS ANGELES

pre-paid discount of Two Hundred and Fifty Thousand Dollars ($250,000) in exchange for GMP agreeing to purchase Four Million Five Hundred Sixty-Eight Thousand Fifty-Nine Dollars ($4,568,059.00) worth of the Paint Products over a five-year term (the "Second Term Purchase Commitment"). (*See* Drucker Decl. at ¶ 6 (Sections 2. D. and 5. A.).) Further, under the Team Ride Share Supply Agreement, GMP agreed to return the entire $250,000.00 advance if the contract terminated and, at that time, GMP had purchased 60% or less of the Second Term Purchase Commitment, i.e., Two Million Seven Hundred Forty Thousand Eight Hundred Sixty-Five Dollars ($2,740,865.00) of the product. (*See id.* at ¶ 6 (Section 8. B.).)

As security for GMP's repayment obligations under the GMP Supply Agreement and the Team Ride Share Supply Agreement, GMP granted Akzo Nobel a security interest in its goods, instruments, promissory notes, chattel paper, documents, books and records, accounts, accounts receivable, equipment, inventory, commercial tort claims, general intangibles, payment intangibles, and software, together with all proceeds and all support obligations thereof. (*See* Drucker Decl. at ¶¶ 5, 7.) In addition, Palermo signed both contracts as GMP's guarantor, personally agreeing to irrevocably and unconditionally guarantee the prompt and complete payment and performance of all of GMP's obligations. (*See id.* at ¶¶ 4 (Section 8. M.), 6 (Section 8. M.).)

On April 27, 2021, Akzo Nobel provided notices of termination of the GMP Supply Agreement and the Team Ride Share Supply Agreement, effective immediately, pursuant to the identical Sections 8 A. (iii) and (viii) in both contracts, which state that "[a]ny party may terminate this Agreement at any time prior to the end of the Term… (iii) in the event that any party ceases to conduct business in the normal and ordinary course, becomes insolvent, makes a general assignment for the benefit of creditors, suffers or permits the appointment of a receiver for its business or assets or avails itself of, or becomes subject to, any federal or state bankruptcy proceeding or any other statute relating to insolvency or the protection of rights of creditors… or (viii) if [GMP] for any reason ceases purchasing (or purchasing its requirements for) Paint and/or Products from [Akzo Nobel] or of Akzo Nobel determines that [GMP] for any reason is purchasing merely a de minimis amount of Paint and/or Products for the primary purpose of avoiding operation of this provision." (*See* Drucker Decl. at ¶¶ 4 (Section 8.), 6 (Section 8.), 8, 9.)

As of the terminations of the GMP Supply Agreement and the Team Ride Share Supply Agreement, GMP had purchased merely One Million Four Hundred and Eleven Thousand Seven Hundred Dollars and 53/100 ($1,411,700.53) of the Paint Products, i.e., well below 60% of either the First Term Purchase Commitment or the Second Term Purchase Commitment (let alone both). (*See* Drucker Decl. at ¶ 10.) Thus, Akzo Nobel demanded repayment of the $3,250,000.00 that it had advanced to GMP and reminded Palermo of his personal liability for those monies as GMP's guarantor. (*See id.* at ¶¶ 8, 9.) To date, Akzo Nobel has not received a response from GMP or Palermo. (*Id.*)

## III. <u>LEGAL STANDARD</u>

After the entry of default against a party who "has failed to plead or otherwise defend," the court may enter a default judgment. Fed. R. Civ. P. 55(a) & (b). The decision to grant or deny a default judgment is discretionary. *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988). The court must first look into its jurisdiction over both the subject matter and the parties. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The court must also "assess the adequacy of service of process on the party against whom default is requested." *Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008) (quotation omitted). Once the court determines that jurisdiction exists and service was sufficient, it may consider the following factors when exercising its discretion to enter a default judgment: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Courts may consider the second and third *Eitel* factors together because examining the merits of a substantive claim and the sufficiency of a complaint share the same requirement, i.e., stating a claim "on which the [plaintiff] may recover." *See Kloepping v. Fireman's Fund*, No. 94–cv–2684–TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996) citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.1978)). "In applying this discretionary standard, default judgments are more often granted than denied." *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D.

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
LOS ANGELES

Cal. 1999); *see also Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001) (same).

In considering a motion for default judgment, the well-pleaded factual allegations in the complaint are taken as true. *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). If the *Eitel* factors support default judgment, judgment may be entered in an amount that is supported by the evidence and that does not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

"In determining damages, a court can rely on the declarations submitted by the plaintiff." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1046 (N.D. Cal. 2010); *Gem v. Groupon, Inc.*, No. LACV2001431JAKSKX, 2021 WL 4691151, at *3 (C.D. Cal. Aug. 25, 2021) ("To determine damages, a court may rely on the declarations submitted by the plaintiff or order a full evidentiary hearing.") (citing Fed. R. Civ. P. 55(b)(2)). "At default judgment, '[p]laintiff's burden in "proving up" damages is relatively lenient.'" *Adobe Sys. Inc. v. Acheampong*, No. 17-CV-02749-CW (RMI), 2019 WL 7212311, at *8 (N.D. Cal. Sept. 24, 2019), report and recommendation adopted, No. 17-CV-02749 CW (RMI), 2019 WL 7212310 (N.D. Cal. Oct. 10, 2019) (citing *Phillip Morris USA Inc., v. Castworld Prod., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003)). "If proximate cause is properly alleged in the complaint, it is admitted upon default. Injury is established and plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the injuries pled. Injury is established and plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the injuries pled." *Philip Morris*, 219 F.R.D. at 498 (internal citations omitted).

## IV. <u>ANALYSIS</u>

### A. <u>This Court Has Subject Matter Jurisdiction.</u>

This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332. Under 28 U.S.C. § 1332(a), federal district courts have original jurisdiction over all civil actions where (1) the action is between citizens of different states or citizens of a state and an alien, and (2) the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

Here, this is an action between citizens of different states. Section 1332(a) requires complete

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
LOS ANGELES

diversity of citizenship, which is established when "each defendant is a citizen of a different State from each plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). As pleaded in the Complaint, Akzo Nobel is a corporation organized under the laws of the State of Delaware, with its principal place of business at 535 Marriott Drive, Suite 500, Nashville, Tennessee 37214. (Dkt. 1 at ¶ 1.) Therefore, Akzo Nobel is a citizen of both Delaware and Tennessee. *See* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business…"). Conversely, GMP, whose members are all citizens of the State of California, and Palermo are both citizens of the State of California. (Dkt. 1 at ¶ 2); *see Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("A limited liability company ('LLC') is a citizen of every state of which its owners or members are citizens for purposes of diversity jurisdiction.").

Further, the amount in controversy exceeds $75,000.00 as—separately from seeking prejudgment interest—the Complaint prays for $3,250,000.00 in compensatory damages. (*See* Dkt. 1.)

**B. <u>Service of Process on GMP Was Adequate.</u>**

Federal Rule of Civil Procedure 4(e) provides that "an individual ... may be served in a judicial district of the United States by … following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located… ." California law allows for service by publication if the party to be served "cannot with reasonable diligence be served in another manner," and is a "necessary or proper party to the action" or "has or claims an interest in real or personal property in this state that is subject to the jurisdiction of the court or the relief demanded in the action." Cal. Code Civ. Pro. § 415.50(a). In order to effectuate service by publication, a party must publish the summons "in a named newspaper, published in this state, that is most likely to give actual notice to the party to be served." Cal. Code Civ. Pro. § 415.50(b). California law also specifies that service by publication will be satisfied twenty-nine days following the first date of publication, with the summons being published at least once a week for four consecutive weeks, with at least five days intervening between the publication dates. *See* Cal. Gov.'t Code § 6064.

Here, Akzo Nobel satisfied all requirements for effectuating service on GMP by publication. On September 17, 2021, this Court issued an Order Granting Second *Ex Parte* Application for Order Authorizing Service by Publication of GMP Cars, LLC and Extending Time to Serve (the "Order"). (Dkt. 19.) Under the Order, Akzo Nobel was to "perfect service on GMP within **fifty (50) days** of the date of [the] Order by publishing the summons to GMP in the *Marin Scope* for four consecutive weeks." (*Id.*) Per the Affidavit of Service, the summons on GMP was published in the *Marin Scope* for four consecutive weeks: 9/29/21, 10/6/21, 10/13/21, and 10/20/21. (Dkt. 21.) Thus, service was complete on October 28, 2021. *See* Cal. Gov. Code § 6064.

### C. The *Eitel* Factors Support Entry of a Default Judgment.

#### 1. Possibility of Prejudice to Plaintiff

Under the first *Eitel* factor, the court examines whether a plaintiff will be prejudiced if the request for entry of default judgment is denied. *Eitel*, 782 F.2d at 1471. A plaintiff who is denied a default judgment and is subsequently left without any other recourse for recovery has a basis for establishing prejudice. *PepsiCo*, 238 F. Supp. 2d at 1177. Here, Akzo Nobel has established that it will be prejudiced if the court denies its request for entry of default judgment. GMP has not participated in this litigation, and Plaintiff would be without recourse to recover for the harm and damages that GMP has caused. Thus, this factor weighs in favor of default judgment.

#### 2. Merits of the Claims & Sufficiency of the Complaint

The next two *Eitel* factors turn upon the adequacy of a plaintiff's allegations and whether the plaintiff has stated a claim upon which it may recover. *Kloepping v. Fireman's Fund*, 1996 WL 75314 at *2 . In the Complaint, Akzo Nobel alleges claims for breach of the GMP Supply Agreement, Breach of the Team Ride Share Supply Agreement, and Unjust Enrichment against GMP. (Dkt. 1)

Under both Georgia and California law,[1] the elements that must be shown to establish a

[1] Akzo Nobel notes that the GMP Supply Agreement and the Team Ride Share Supply Agreement both contain choice of law provisions calling for the application of Georgia law. (*See* Drucker Decl. at ¶¶ 4 (Section 10. E.), 6 (Section 10. E.).) With the exception of the rate at which prejudgment interest is to be calculated, which is discussed in detail below, California and Georgia law are identical regarding the substantive issues in this action, rendering a choice of law analysis irrelevant. However, out of an abundance of caution, regarding all substantive issues in this action, Akzo Nobel cites authorities regarding both California and Georgia law.



NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
LOS ANGELES

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
LOS ANGELES

breach of contract claim are consistent: "(1) the existence of a contract; (2) plaintiff's performance of the contract or excuse for a nonperformance; (3) defendant's breach; and (4) the resulting damage to plaintiff." *Lortz v. Connell*, 273 Cal. App. 2d 286, 290 (1969); *cf. Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290, 1295 (N.D. Ga. 2015) ("The elements of a breach of contract claim in Georgia are (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom.") (internal citations omitted).

Here, Akzo Nobel has stated claims for breach of contract. The parties entered two written contracts: the GMP Supply Agreement and the Team Ride Share Supply Agreement. (Dkt. 1 at ¶¶ 11, 20.) Akzo Nobel fully performed its obligations under these contracts, i.e., advancing a total of $3,250,000.00 in pre-paid discounts to GMP. (*Id.* at ¶¶ 32, 44.) GMP breached the contracts and damaged Akzo Nobel by refusing to repay the advances as required by the contacts after failing to purchase the minimum amount of the Paint Products. (*Id.* at ¶¶ 40, 51.)

Regarding Akzo Nobel's claim for unjust enrichment, to allege a claim for quasi-contract or unjust enrichment, a plaintiff must assert "receipt of a benefit and unjust retention of the benefit at the expense of another." *Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583, 1593 (2008); *see also Clark v. Aaron's, Inc.*, 914 F. Supp. 2d 1301, 1309 (N.D. Ga. 2012) ("the essential elements of the claim are that (1) a benefit has been conferred, (2) compensation has not been given for receipt of the benefit, and (3) the failure to so compensate would be unjust"). Here, GMP received the benefit of $3,250,000.00 in pre-paid discounts for Paint Products. (Dkt. 1 at ¶¶ 32, 44.) Akzo Nobel unjustly retained those benefits by refusing to repay the advances as required by the contacts after failing to purchase the minimum amount of the Paint Products. (*Id.* at ¶¶ 40, 51.)

Because Akzo Nobel sufficiently alleges its claims for breach of contract and for unjust enrichment, the second and third *Eitel* factors weigh in favor of the entry of default judgment.

**3. The Sum of Money at Stake in the Action**

Pursuant to the fourth *Eitel* factor, the Court balances "the amount of money at stake in relation to the seriousness of the [defaulting party's] conduct." *PepsiCo*, 238 F. Supp. 2d at 1176; *see also Eitel*, 782 F.2d at 1471-72. "This determination requires a comparison of the recovery sought and the nature of defendant's conduct to determine whether the remedy is appropriate."

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
LOS ANGELES

*United States v. Broaster Kitchen. Inc.*, No. 2:14–cv–09421–MMM, 2015 WL 4545360, at *6 (C.D. Cal. May 27, 2015); *see also Walters v. Statewide Concrete Barrier, Inc.*, No. 3:04–cv–02559–JSW, 2006 WL 2527776, *4 (N.D. Cal. Aug. 30, 2006) ("If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted."); *see also Canadian Nat. Ry. Co. v. Phoenix Logistics, Inc.*, No. 11–cv–04589–EMC, 2012 WL 1376978, at *2 (N.D. Cal. Apr. 19, 2012) ("The remedy sought by Plaintiff is limited to the damages that would be reasonably expected to put Plaintiff in the same position had Defendant fulfilled its contractual obligations ... [t]herefore, the sum of money at stake is reasonably proportionate to the harm caused to Plaintiff by Defendant's breach.").

Here, the amount of damages sought are proportionate to the harm caused. Akzo Nobel paid GMP a total advance of $3,250,000.00 based on the agreement that GMP would either purchase a total of $25,337,710.00 of the Paint Products or return some of the advanced monies. Moreover, GMP agreed to return **all** of the advanced monies if it failed to purchase $12,461,791.00 of the Paint Products (under the GMP Supply Agreement) or $2,740,865.00 of the Paint Products (under the Team Ride Share Supply Agreement). Instead, GMP only purchased $1,411,700.53 of the Paint Products. And, GMP refused to return the advanced monies after Akzo Nobel terminated these contracts. Beyond these compensatory damages, Akzo Nobel is *not* seeking a large award of punitive or special damages, but rather prejudgment interest at a rate of 7% per annum, which is proper under Ga. Code Ann. § 7-4-2.[2] This factor thus weighs in favor of default judgment.

**4. Possibility of Dispute**

The fifth *Eitel* factor considers the possibility that material facts are disputed. *Eitel*, 782 F.2d at 1471–72. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *PepsiCo*, 238 F. Supp. 2d at 1177 (internal citations omitted). Accordingly, there does not appear to be disputed material facts and this factor weighs in favor of default judgment.

/ / /

[2] Akzo Nobel notes that, under California law, prejudgment interest is to be calculated at a rate of 10% per annum. *See* Cal. Civ. Code § 3289(b).

**5. Possibility of Excusable Neglect**

The sixth *Eitel* factor considers whether defendant's default may have been the product of excusable neglect. *PepsiCo*, 238 F. Supp. 2d at 1177; *see also Eitel*, 782 F.2d at 1471–72. Here, there is no indication that GMP allowed the default to be taken as the result of excusable neglect. Palermo was served via substitute service—with the summons, complaint, and supporting documents being given to an employee at GMP's business address and those same documents being subsequently mailed to GMP's business address—effectively giving actual notice of this action to GMP. (*See* Dkt. 11.) Moreover, prior to properly serving GMP via publication (Dkt. 21), Akzo Nobel attempted personal service on Aaron M. Langmayer, the current listed managing member of GMP per the California Secretary of State's website, multiple times. (Dkt. 16-1.) Apparently aware of this action, Mr. Langmayer appeared to hide from Akzo Nobel's process server. (*Id.*)

**6. Public Policy in Favor of Deciding the Merits**

Under the seventh *Eitel* factor, the Court takes into account the strong policy favoring decisions on the merits. *See Eitel*, 782 F.2d at 1472 ("Cases should be decided upon their merits whenever reasonably possible."). However, a party's failure to answer or appear makes a decision on the merits impractical, if not impossible. *PepsiCo*, 238 F. Supp. 2d at 1177. Accordingly, this factor does not preclude entry of default judgment.

**7. Conclusion regarding the *Eitel* Factors**

Apart from the policy favoring decisions on the merits, all of the remaining *Eitel* factors counsel in favor of default judgment, including the merits of Akzo Nobel's claims. *See Federal Nat. Mortg. Ass'n v. George*, No. 5:14–cv–01679–VAP–SP, 2015 WL 4127958, *3 (C.D. Cal. July 7, 2015) ("The merits of the plaintiff's substantive claim and the sufficiency of the complaint are often treated by courts as the most important *Eitel* factors.") (citation omitted). Therefore, weighing all of the *Eitel* factors, this Court should find that entering a default judgment is appropriate.

**D. <u>Remedies</u>**

After determining default liability, a court then calculates the amount of damages that should be awarded. *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1078 (C.D. Cal. 2012).



NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
LOS ANGELES

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
LOS ANGELES

**1. Damages**

Akzo Nobel seeks damages in the principal amount of $3,250,000.00 based on the monies that Akzo Nobel advanced to GMP and that GMP was required to return in full under the parties' contracts. (*See* Drucker Decl. at ¶¶ 4, 6.) "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (internal citations omitted). "In determining damages, a court can rely on the declarations submitted by the plaintiff." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d at. 1046. Here, regarding the principal amount of damages, Akzo Nobel has provided admissible proof of its damages in the form of the declaration of Peter A. Drucker and the documents attached thereto. Under the GMP Supply Agreement and the Team Ride Share Supply Agreement, which are both attached to Peter A. Drucker's declaration (*see* Drucker Decl. at ¶¶ 4, 6), GMP agreed to return all advanced monies (i.e., $3,250,000) if GMP had failed to purchase more than 60% of the First Term Purchase Commitment (i.e., $12,461,791.00) or the Second Term Purchase Commitment (i.e., $2,740,865.00). (*See id.* at ¶¶ 4 (Sections 2. D. and 5. A.), 6 (Sections 2. D. and 5. A).) Here, per the declaration of Peter A. Drucker, at the time that Akzo Nobel terminated the parties' contracts, GMP had only purchased $1,411,700.53 worth of the Paint Products—well below 60% of either the First Term Purchase Commitment or the Second Term Purchase Commitment (let alone both). (*See* Drucker Decl. at ¶ 10.) Thus, per the express terms of the GMP Supply Agreement and the Team Ride Share Supply Agreement, Akzo Nobel is entitled to the return of all $3,250,000.00 that it previously advanced to GMP.

**2. Prejudgment Interest**

A district court "may exercise discretion when awarding prejudgment interest, but [ ] generally it should be granted unless: it would lead to an unwarranted delay of litigation, there was no actual loss, there is no proof of deprivation of use, the parties stipulated to exclude prejudgment interest, or there was bad faith." *Cold Smoke Capital, LLC v. Gross*, 2014 WL 12558852, *3 (C.D. Cal. 2014) (citing *Alkmeon Naviera, S.A. v. M/V Marina L*, 633 F.2d 789, 797-98 (9th Cir. 1980)) (finding a prejudgment interest rate of 10% per annum rate based on California Civil Code § 3289

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
LOS ANGELES

reasonable). Here, prejudgment interest should be awarded as none of the factors weighing against granting prejudgment interest are present. Out of an abundance of caution regarding the law that is applicable to this action, Akzo Nobel seeks prejudgment interest at a rate of 7% per annum under Ga. Code Ann. § 7-4-2—as opposed to the 10% rate called for under California law.

The amount of prejudgment interest will depend on the date on which judgment is entered. As of January 6, 2022, 254 days have passed since April 27, 2021—when GMP and/or Palermo were required to return the $3,250,000.00 in unearned advanced monies upon termination. With a principal of $3,250,000.00, one year of simple interest at seven percent amounts to $227,500.00, or ~$623.29 of interest day ($3,250,000.00 x 7% ÷ 365 days). After 254 days, $158,315.07 of interest has accrued (($3,250,000.00 x 7% ÷ 365 days) x 254 days).

## V. CONCLUSION

Akzo Nobel respectfully requests that the Court enter a default judgment against GMP awarding damages in the sum of $3,250,000.00 plus prejudgment interest at a rate of 7% per annum under Ga. Code Ann. § 7-4-2.

Dated: January 6, 2022

Respectfully submitted,
NELSON MULLINS RILEY & SCARBOROUGH LLP

By: */s/ Crispin L. Collins*
Crispin L. Collins

Attorneys for Plaintiff
Akzo Nobel Coatings Inc.