Nelson Mullins Riley & Scarborough LLP
CRISPIN L. COLLINS (SBN 311755)
crispin.collins@nelsonmullins.com
19191 South Vermont Avenue, Suite 900
Torrance, CA 90502
Telephone:   424.221.7400
Facsimile:   424.221.7499
Email:       crispin.collins@nelsonmullins.com

Attorney for Plaintiff
AKZO NOBEL COATINGS INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| Akzo Nobel Coatings Inc.,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>GMP Cars, LLC and Geoffrey M. Palermo,<br><br>　　　　Defendant. | Case No. 4:21-cv-03359-YGR<br><br>*Assigned for all purposes to Hon. Yvonne Gonzalez Rogers*<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT GEOFFREY M. PALERMO AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed concurrently with Declaration of Peter A. Drucker in support thereof]<br><br>Hearing Date:　　February 15, 2022<br>Hearing Time:　　2:00 p.m.<br>Hearing Location: Courtroom 1<br><br>Complaint filed: May 5, 2021 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 15, 2022 at 2:00 p.m. or as soon thereafter as this matter can be heard before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1 of the United States District Court for the Northern District of California, located at Ronald V. Dellums Federal Building & United States Courthouse 1301 Clay Street, Oakland, California 94612, Plaintiff Akzo Nobel Coatings Inc. will and hereby does move this Court for entry of a default judgment against Defendant GMP Cars, LLC ("GMP") in the amount of Three Million Two Hundred and Fifty Thousand Dollar ($3,250,000.000) plus prejudgment interest at a rate of seven percent (7%) per annum under Ga. Code Ann. § 7-4-2.

The Motion is made on the grounds that GMP has failed to appear or otherwise respond to the Complaint within the time prescribed by the Federal Rules of Civil Procedure and that the Clerk of the Court has entered a default in this Action.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Peter A. Drucker filed concurrently herewith, all papers on file with the Court, and all evidence and argument presented at or before the hearing on this Motion.

Dated:   January 6, 2022

Respectfully submitted,
NELSON MULLINS RILEY & SCARBOROUGH LLP

By:   */s/ Crispin L. Collins*
      Crispin L. Collins

Attorneys for Plaintiff
Akzo Nobel Coatings Inc.

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

I.     INTRODUCTION ...........................................................................................................6
II.    RELEVANT FACTUAL BACKGROUND ..................................................................6
III.   LEGAL STANDARD ....................................................................................................8
IV.    ANALYSIS .....................................................................................................................9
       A.   This Court Has Subject Matter Jurisdiction. ........................................................9
       B.   Service of Process on GMP Was Adequate. .......................................................10
       C.   The *Eitel* Factors Support Entry of a Default Judgment. ...................................10
            1.   Possibility of Prejudice to Plaintiff .........................................................10
            2.   Merits of the Claims & Sufficiency of the Complaint .............................11
            3.   The Sum of Money at Stake in the Action ...............................................12
            4.   Possibility of Dispute ...............................................................................13
            5.   Possibility of Excusable Neglect ..............................................................13
            6.   Public Policy in Favor of Deciding the Merits ........................................13
            7.   Conclusion regarding the *Eitel* Factors ..................................................14
       D.   Remedies .............................................................................................................14
            1.   Damages ...................................................................................................14
            2.   Prejudgment Interest ................................................................................15
V.     CONCLUSION ............................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*3126 Piedmont, LLC v. Darby*, No. 1:14-CV-2297-SCJ, 2015 WL 12857073 (N.D. Ga. Mar. 16, 2015) .................................................................................................................................. 12

*Adobe Sys. Inc. v. Acheampong*, No. 17-CV-02749-CW (RMI), 2019 WL 7212311 (N.D. Cal. Sept. 24, 2019), report and recommendation adopted, No. 17-CV-02749 CW (RMI), 2019 WL 7212310 (N.D. Cal. Oct. 10, 2019) ............................................................................................... 9

*Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388 (9th Cir. 1988) ............................................. 8

*Alkmeon Naviera, S.A. v. M/V Marina L*, 633 F.2d 789 (9th Cir. 1980) ........................................ 15

*Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290 (N.D. Ga. 2015) .............................. 12

*Canadian Nat. Ry. Co. v. Phoenix Logistics, Inc.*, No. 11–cv–04589–EMC, 2012 WL 1376978 (N.D. Cal. Apr. 19, 2012) ............................................................................................................ 12

*Clark v. Aaron's, Inc.*, 914 F. Supp. 2d 1301 (N.D. Ga. 2012) ...................................................... 11

*Cold Smoke Capital, LLC v. Gross*, 2014 WL 12558852 (C.D. Cal. 2014) ................................... 15

*Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261 (9th Cir. 1992) ..................................................... 9

*Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038 (N.D. Cal. 2010) ............................ 9, 14

*Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) ...................................................... 8, 10, 12, 13, 14

*Federal Nat. Mortg. Ass'n v. George*, No. 5:14–cv–01679–VAP–SP, 2015 WL 4127958 (C.D. Cal. July 7, 2015) ........................................................................................................................ 14

*Gray1 CPB, LLC v. Kolokotronis*, 202 Cal.App.4th 480 (2011) ................................................... 12

*In re Tuli*, 172 F.3d 707 (9th Cir. 1999) .......................................................................................... 8

*Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894 (9th Cir. 2006) ................................. 10

*Kloepping v. Fireman's Fund*, No. 94–cv–2684–TEH, 1996 WL 75314 (N.D. Cal. Feb. 13, 1996) ................................................................................................................................................. 8, 11

*Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365 (1978) ....................................................... 10

*Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083 (N.D. Cal. 2008) ................................ 8

*PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431 (C.D. Cal. 1999) .................... 9, 11, 12, 13, 14

*Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583 (2008) .................................................. 11

Nelson Mullins Riley & Scarborough LLP
Attorneys at Law
Los Angeles

*Phillip Morris USA Inc., v. Castworld Prod., Inc.*, 219 F.R.D. 494 (C.D. Cal. 2003) .................... 9

*Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995 (N.D. Cal. 2001) ................... 9

*Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915 (9th Cir. 1987) ................................................. 14

*United States v. Broaster Kitchen. Inc.*, No. 2:14–cv–09421–MMM, 2015 WL 4545360 (C.D. Cal. May 27, 2015) ................................................................................................................... 12

*Walters v. Statewide Concrete Barrier, Inc.*, No. 3:04–cv–02559–JSW, 2006 WL 2527776 (N.D. Cal. Aug. 30, 2006) ................................................................................................................. 12

*Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072 (C.D. Cal. 2012) .............................. 14

**Statutes**

28 U.S.C. § 1332 ............................................................................................................................. 8

28 U.S.C. § 1332(a) ........................................................................................................................ 8

28 U.S.C. § 1332(c)(1) .................................................................................................................... 9

Cal. Civ. Code § 3289 ................................................................................................................... 14

Cal. Civ. Code § 3289(b) .............................................................................................................. 12

Cal. Code Civ. Proc. § 415.20(a) .................................................................................................... 9

Fed. R. Civ. P. 4(e) ......................................................................................................................... 9

Fed. R. Civ. P. 54(c) ....................................................................................................................... 8

Fed. R. Civ. P. 55(a) ....................................................................................................................... 7

Fed. R. Civ. P. 55(b) ....................................................................................................................... 7

Ga. Code Ann. § 7-4-2 ........................................................................................................ 5, 12, 14

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On May 5, 2021, Plaintiff Akzo Nobel Coatings Inc. ("Akzo Nobel") initiated the instant action against Defendants GMP Cars, LLC ("GMP") and Geoffrey M. Palermo ("Palermo") for, among other things, breach of contract. (*See* Dkt. 1.) GMP and Palermo were each duly served but have failed to appear in this action. Accordingly, the Clerk of the court entered defaults against GMP and Palermo on, November 24, 2021 and June 29, 2021 respectively. (Dkt. 23 and 15.) Neither GMP nor Palermo has responded to the Complaint. As such, default judgments are now appropriate. Akzo Nobel seeks a judgement awarding damages in the sum of $3,250,000.00 plus prejudgment interest at a rate of 7% per annum under Ga. Code Ann. § 7-4-2.

## II. RELEVANT FACTUAL BACKGROUND

Akzo Nobel manufacturers car refinishes and coatings including the Sikkens brand paint products (the "Paint Products"). (*See* Declaration of Peter A. Drucker (Drucker Decl.) at ¶ 1.) GMP is a former client of Akzo Nobel that owned and operated ten automotive collision repair and refinishing facilities throughout California. (*Id.* at ¶ 2.) At all times relevant to this action, Palermo owned GMP. (*Id.* at ¶ 3.)

In 2018 and 2019, Akzo Nobel, GMP, and Palermo entered two contracts: the GMP Supply Agreement and the Team Ride Share Supply Agreement. (*See* Drucker Decl. at ¶¶ 4, 6.) Under the GMP Supply Agreement, Akzo Nobel Agreed to and did advance to GMP a pre-paid discount of Three Million Dollars ($3,000,000.00). (*See id.* at ¶ 4 (Section 5. A.).) In exchange for this advance, GMP agreed to purchase at least Twenty Million Seven Hundred Sixty-Nine Thousand Six Hundred Fifty-One Dollars ($20,769,651.00) of the Paint Products during the seven-year term of GMP Supply Agreement (the "First Term Purchase Commitment"). (*See id.* at ¶ 4 (Section 2.).) Further, GMP agreed to return the entire $3,000,000.00 advance if the contract terminated and, at that time, GMP had purchased 60% or less of the First Term Purchase Commitment, i.e., Twelve Million Four Hundred Sixty-One Thousand Seven Hundred Ninety-One Dollars ($12,461,791.00) of the Paint Products. (*See id.* at ¶ 4 (Section 8. B.).)

Similarly, under the Team Ride Share Supply Agreement, Akzo Nobel advanced to GMP a

pre-paid discount of Two Hundred and Fifty Thousand Dollars ($250,000) in exchange for GMP agreeing to purchase Four Million Five Hundred Sixty-Eight Thousand Fifty-Nine Dollars ($4,568,059.00) worth of the Paint Products over a five-year term (the "Second Term Purchase Commitment"). (*See* Drucker Decl. at ¶ 6 (Sections 2. D. and 5. A.).) Further, under the Team Ride Share Supply Agreement, GMP agreed to return the entire $250,000.00 advance if the contract terminated and, at that time, GMP had purchased 60% or less of the Second Term Purchase Commitment, i.e., Two Million Seven Hundred Forty Thousand Eight Hundred Sixty-Five Dollars ($2,740,865.00) of the product. (*See id.* at ¶ 6 (Section 8. B.).)

As security for GMP's repayment obligations under the GMP Supply Agreement and the Team Ride Share Supply Agreement, GMP granted Akzo Nobel a security interest in its goods, instruments, promissory notes, chattel paper, documents, books and records, accounts, accounts receivable, equipment, inventory, commercial tort claims, general intangibles, payment intangibles, and software, together with all proceeds and all support obligations thereof. (*See* Drucker Decl. at ¶¶ 5, 7.) In addition, Palermo signed both contracts as GMP's guarantor, personally agreeing to irrevocably and unconditionally guarantee the prompt and complete payment and performance of all of GMP's obligations. (*See id.* at ¶¶ 4 (Section 8. M.), 6 (Section 8. M.).)

On April 27, 2021, Akzo Nobel provided notices of termination of the GMP Supply Agreement and the Team Ride Share Supply Agreement, effective immediately, pursuant to the identical Section 8 A. (iii) and (viii) in both contracts, which state that "[a]ny party may terminate this Agreement at any time prior to the end of the Term… (iii) in the event that any party ceases to conduct business in the normal and ordinary course, becomes insolvent, makes a general assignment for the benefit of creditors, suffers or permits the appointment of a receiver for its business or assets or avails itself of, or becomes subject to, any federal or state bankruptcy proceeding or any other statute relating to insolvency or the protection of rights of creditors… or (viii) if [GMP] for any reason ceases purchasing (or purchasing its requirements for) Paint and/or Products from [Akzo Nobel] or of Akzo Nobel determines that [GMP] for any reason is purchasing merely a de minimis amount of Paint and/or Products for the primary purpose of avoiding operation of this provision." (*See* Drucker Decl. at ¶¶ 4 (Section 8.), 6 (Section 8.), 8, 9.)

As of the terminations of the GMP Supply Agreement and the Team Ride Share Supply Agreement, GMP had purchased merely One Million Four Hundred and Eleven Thousand Seven Hundred Dollars and 53/100 ($1,411,700.53) of the Paint Products, i.e., well below 60% of either the First Term Purchase Commitment or the Second Term Purchase Commitment (let alone both). (*See* Drucker Decl. at ¶ 10.) Thus, Akzo Nobel demanded repayment of the $3,250,000.00 that it had advanced to GMP and reminded Palermo of his personal liability for those monies as GMP's guarantor. (*See id.* at ¶¶ 8, 9.) To date, Akzo Nobel has not received a response from GMP or Palermo. (*Id.*)

### III.  LEGAL STANDARD

After the entry of default against a party who "has failed to plead or otherwise defend," the court may enter a default judgment. Fed. R. Civ. P. 55(a) & (b). The decision to grant or deny a default judgment is discretionary. *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988). The court must first look into its jurisdiction over both the subject matter and the parties. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The court must also "assess the adequacy of service of process on the party against whom default is requested." *Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008) (quotation omitted). Once the court determines that jurisdiction exists and service was sufficient, it may consider the following factors when exercising its discretion to enter a default judgment: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Courts may consider the second and third *Eitel* factors together because examining the merits of a substantive claim and the sufficiency of a complaint share the same requirement, i.e., stating a claim "on which the [plaintiff] may recover." *See Kloepping v. Fireman's Fund*, No. 94–cv–2684–TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996) citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.1978)). "In applying this discretionary standard, default judgments are more often granted than denied." *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D.

Cal. 1999); *see also Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001) (same).

In considering a motion for default judgment, the well-pleaded factual allegations in the complaint are taken as true. *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). If the *Eitel* factors support default judgment, judgment may be entered in an amount that is supported by the evidence and that does not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

"In determining damages, a court can rely on the declarations submitted by the plaintiff." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1046 (N.D. Cal. 2010); *Gem v. Groupon, Inc.*, No. LACV2001431JAKSKX, 2021 WL 4691151, at *3 (C.D. Cal. Aug. 25, 2021) ("To determine damages, a court may rely on the declarations submitted by the plaintiff or order a full evidentiary hearing.") (citing Fed. R. Civ. P. 55(b)(2)). "At default judgment, '[p]laintiff's burden in "proving up" damages is relatively lenient.'" *Adobe Sys. Inc. v. Acheampong*, No. 17-CV-02749-CW (RMI), 2019 WL 7212311, at *8 (N.D. Cal. Sept. 24, 2019), report and recommendation adopted, No. 17-CV-02749 CW (RMI), 2019 WL 7212310 (N.D. Cal. Oct. 10, 2019) (citing *Phillip Morris USA Inc., v. Castworld Prod., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003)). "If proximate cause is properly alleged in the complaint, it is admitted upon default. Injury is established and plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the injuries pled. Injury is established and plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the injuries pled." *Philip Morris*, 219 F.R.D. at 498 (internal citations omitted).

**IV.  ANALYSIS**

    **A.  This Court Has Subject Matter Jurisdiction.**

This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332. Under 28 U.S.C. § 1332(a), federal district courts have original jurisdiction over all civil actions where (1) the action is between citizens of different states or citizens of a state and an alien, and (2) the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

Here, this is an action between citizens of different states. Section 1332(a) requires complete

diversity of citizenship, which is established when "each defendant is a citizen of a different State from each plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). As pleaded in the Complaint, Akzo Nobel is a corporation organized under the laws of the State of Delaware, with its principal place of business at 535 Marriott Drive, Suite 500, Nashville, Tennessee 37214. (Dkt. 1 at ¶ 1.) Therefore, Akzo Nobel is a citizen of both Delaware and Tennessee. *See* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business…"). Conversely, GMP, whose members are all citizens of the State of California, and Palermo are both citizens of the State of California. (Dkt. 1 at ¶ 2); *see Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("A limited liability company ('LLC') is a citizen of every state of which its owners or members are citizens for purposes of diversity jurisdiction.").

Further, the amount in controversy exceeds $75,000.00 as—separately from seeking prejudgment interest—the Complaint prays for $3,250,000.00 in compensatory damages. (*See* Dkt. 1.)

**B.    Service of Process on Palermo Was Adequate.**

Federal Rule of Civil Procedure 4(e) provides that "an individual ... may be served in a judicial district of the United States by … following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located… ." Under California law, a defendant can be served by substitute service "by leaving a copy of the summons and complaint during usual office hours in his or her office… with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." Cal. Code Civ. Proc. § 415.20(a). Here, Palermo was properly served via substitute service. (*See* Dkt. 11.)

**C.    The *Eitel* Factors Support Entry of a Default Judgment.**

**1.    Possibility of Prejudice to Plaintiff**

Under the first *Eitel* factor, the court examines whether a plaintiff will be prejudiced if the request for entry of default judgment is denied. *Eitel*, 782 F.2d at 1471. A plaintiff who is denied a

default judgment and is subsequently left without any other recourse for recovery has a basis for establishing prejudice. *PepsiCo*, 238 F. Supp. 2d at 1177. Here, Akzo Nobel has established that it will be prejudiced if the court denies its request for entry of default judgment. Neither GMP nor Palermo has participated in this litigation, and Plaintiff would be without recourse to recover for the harm and damages that GMP and Palermo have caused. Thus, this factor weighs in favor of default judgment.

### 2. Merits of the Claims & Sufficiency of the Complaint

The next two *Eitel* factors turn upon the adequacy of a plaintiff's allegations and whether the plaintiff has stated a claim upon which it may recover. *Kloepping v. Fireman's Fund*, 1996 WL 75314 at *2 . In the Complaint, Akzo Nobel alleges claims for Unjust Enrichment and Collection on Guaranty against Palermo. (Dkt. 1)

Regarding Akzo Nobel's claim for unjust enrichment, under both California and Georgia law,[1] to allege a claim for quasi-contract or unjust enrichment, a plaintiff must assert "receipt of a benefit and unjust retention of the benefit at the expense of another." *Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583, 1593 (2008); *see also Clark v. Aaron's, Inc.*, 914 F. Supp. 2d 1301, 1309 (N.D. Ga. 2012) ("the essential elements of the claim are that (1) a benefit has been conferred, (2) compensation has not been given for receipt of the benefit, and (3) the failure to so compensate would be unjust"). Here, Palermo received the benefit of $3,250,000.00 in pre-paid discounts for Paint Products as Palermo is the owner of GMP. (Dkt. 1 at ¶¶ 10, 32, 44.) Palermo unjustly retained those benefits by refusing to repay the advances as required by the contacts after GMP failed to purchase the minimum amount Paint Products. (*Id.* at ¶¶ 40, 51, 55.)

To collect on an Unconditional Guarantee, a plaintiff must prove the existence of a valid agreement, that the borrower has defaulted, and that the guarantor failed to perform under the guarantee. *See 3126 Piedmont, LLC v. Darby*, No. 1:14-CV-2297-SCJ, 2015 WL 12857073, at *2

---

[1] Akzo Nobel notes that the GMP Supply Agreement and the Team Ride Share Supply Agreement both contain choice of law provisions calling for the application of Georgia law. (*See* Drucker Decl. at ¶¶ 4 (Section 10. E.), 6 (Section 10. E.).) With the exception of the rate at which prejudgment interest is to be calculated, which is discussed in detail below, California and Georgia law are identical regarding the substantive issues in this action, rendering a choice of law analysis irrelevant. However, out of an abundance of caution, regarding all substantive issues in this action, Akzo Nobel cites authorities regarding both California and Georgia law.

(N.D. Ga. Mar. 16, 2015) (granting a motion for default judgment based on the breach of a "Guarantee Agreement" and applying elements of claim for breach of contract under Georgia law); *see also Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290, 1295 (N.D. Ga. 2015) ("The elements of a breach of contract claim in Georgia are (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom.") (internal citations omitted); *see also Gray1 CPB, LLC v. Kolokotronis*, 202 Cal.App.4th 480, 486 (2011) (elements of cause of action for breach of guaranty are "1) there is a valid guaranty, 2) the borrower has defaulted, and 3) the guarantor failed to perform under the guaranty"). Here, Palermo signed the GMP Supply Agreement as well as the Team Ride Share Supply Agreement and personally agreed to irrevocably and unconditionally guarantee the prompt and complete payment and performance of all of GMP's obligations under the contracts. (Dkt. 1 at ¶¶ 59-60.) GMP defaulted on its obligations by refusing to repay the advances it received from Akzo Nobel after GMP failed to purchase the minimum amount of the Paint Products. (*Id.* at ¶¶ 40, 51, 55.) In turn, Palermo failed to perform under the guaranty, refusing to personally pay Akzo Nobel the monies to which it is entitled. (*Id.*)

Because Akzo Nobel sufficiently alleges its claims for Unjust Enrichment and Collection on Guaranty, the second and third *Eitel* factors weigh in favor of the entry of default judgment.

### 3. The Sum of Money at Stake in the Action

Pursuant to the fourth *Eitel* factor, the Court balances "the amount of money at stake in relation to the seriousness of the [defaulting party's] conduct." *PepsiCo*, 238 F. Supp. 2d at 1176; *see also Eitel*, 782 F.2d at 1471-72. "This determination requires a comparison of the recovery sought and the nature of defendant's conduct to determine whether the remedy is appropriate." *United States v. Broaster Kitchen. Inc.*, No. 2:14–cv–09421–MMM, 2015 WL 4545360, at *6 (C.D. Cal. May 27, 2015); *see also Walters v. Statewide Concrete Barrier, Inc.*, No. 3:04–cv–02559–JSW, 2006 WL 2527776, *4 (N.D. Cal. Aug. 30, 2006) ("If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted."); *see also Canadian Nat. Ry. Co. v. Phoenix Logistics, Inc.*, No. 11–cv–04589–EMC, 2012 WL 1376978, at *2 (N.D. Cal. Apr. 19, 2012) ("The remedy sought by Plaintiff is limited to the damages that would be reasonably expected to put Plaintiff in the same position had Defendant fulfilled its

contractual obligations ... [t]herefore, the sum of money at stake is reasonably proportionate to the harm caused to Plaintiff by Defendant's breach.").

Here, the amount of damages sought are proportionate to the harm caused. Akzo Nobel paid GMP a total advance of $3,250,000.00 based on the agreement that GMP would either purchase a total of $25,337,710.00 of the Paint Products or return some of the advanced monies, with Palermo Guaranteeing the performance of GMP. Moreover, Palermo personally guaranteed that GMP would return **all** of the advanced monies if it failed to purchase $12,461,791.00 of the Paint Products (under the GMP Supply Agreement) or $2,740,865.00 of the Paint Products (under the Team Ride Share Supply Agreement). Instead, GMP only purchased $1,411,700.53 of the Paint Products. And, both GMP and Palermo refused to return the advanced monies after Akzo Nobel terminated these contracts. Beyond these compensatory damages, Akzo Nobel is *not* seeking a large award of punitive or special damages, but rather prejudgment interest at a rate of 7% per annum, which is proper under Ga. Code Ann. § 7-4-2.[2] This factor thus weighs in favor of default judgment.

### 4. Possibility of Dispute

The fifth *Eitel* factor considers the possibility that material facts are disputed. *Eitel*, 782 F.2d at 1471–72. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *PepsiCo*, 238 F. Supp. 2d at 1177 (internal citations omitted). Accordingly, there does not appear to be disputed material facts and this factor weighs in favor of default judgment.

### 5. Possibility of Excusable Neglect

The sixth *Eitel* factor considers whether defendant's default may have been the product of excusable neglect. *PepsiCo*, 238 F. Supp. 2d at 1177; *see also Eitel*, 782 F.2d at 1471–72. Here, there is no indication that Palermo allowed the default to be taken as the result of excusable neglect. Palermo was served via substitute service over seven months ago, on May 16, 2021. (Dkt. 11.)

### 6. Public Policy in Favor of Deciding the Merits

Under the seventh *Eitel* factor, the Court takes into account the strong policy favoring

---

[2] Akzo Nobel notes that, under California law, prejudgment interest is to be calculated at a rate of 10% per annum. *See* Cal. Civ. Code § 3289(b).

decisions on the merits. *See Eitel*, 782 F.2d at 1472 ("Cases should be decided upon their merits whenever reasonably possible."). However, a party's failure to answer or appear makes a decision on the merits impractical, if not impossible. *PepsiCo*, 238 F. Supp. 2d at 1177. Accordingly, this factor does not preclude entry of default judgment.

### 7. Conclusion regarding the *Eitel* Factors

Apart from the policy favoring decisions on the merits, all of the remaining *Eitel* factors counsel in favor of default judgment, including the merits of Akzo Nobel's claims. *See Federal Nat. Mortg. Ass'n v. George*, No. 5:14–cv–01679–VAP–SP, 2015 WL 4127958, *3 (C.D. Cal. July 7, 2015) ("The merits of the plaintiff's substantive claim and the sufficiency of the complaint are often treated by courts as the most important *Eitel* factors.") (citation omitted). Therefore, weighing all of the *Eitel* factors, this Court should find that entering a default judgment is appropriate.

### D. Remedies

After determining default liability, a court then calculates the amount of damages that should be awarded. *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1078 (C.D. Cal. 2012).

### 1. Damages

Akzo Nobel seeks damages in the principal amount of $3,250,000.00 based on the monies that Akzo Nobel advanced to GMP and that Palermo personally guaranteed would be returned. (*See* Drucker Decl. at ¶¶ 4, 6.) "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (internal citations omitted). "In determining damages, a court can rely on the declarations submitted by the plaintiff." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d at. 1046. Here, regarding the principal amount of damages, Akzo Nobel has provided admissible proof of its damages in the form of the declaration of Peter A. Drucker and the documents attached thereto. Under the GMP Supply Agreement and the Team Ride Share Supply Agreement, which are both attached to Peter A. Drucker's declaration (*see* Drucker Decl. at ¶¶ 4, 6), GMP agreed to return all advanced monies (i.e., $3,250,000) if GMP had failed to purchase more than 60% of the First Term Purchase Commitment (i.e., $12,461,791.00)

or the Second Term Purchase Commitment (i.e., $2,740,865.00). (*See id.* at ¶¶ 4 (Sections 2. D. and 5. A.), 6 (Sections 2. D. and 5. A).) Here, per the declaration of Peter A. Drucker, at the time that Akzo Nobel terminated the parties' contracts, GMP had only purchased $1,411,700.53 worth of the Paint Products—well below 60% of either the First Term Purchase Commitment or the Second Term Purchase Commitment (let alone both). (*See* Drucker Decl. at ¶ 10.) Thus, per the express terms of the GMP Supply Agreement and the Team Ride Share Supply Agreement, Akzo Nobel is entitled to the return of all $3,250,000.00 that it previously advanced to GMP, and Palermo is personally liable for GMP's failure to return of said monies.

### 2. Prejudgment Interest

A district court "may exercise discretion when awarding prejudgment interest, but [ ] generally it should be granted unless: it would lead to an unwarranted delay of litigation, there was no actual loss, there is no proof of deprivation of use, the parties stipulated to exclude prejudgment interest, or there was bad faith." *Cold Smoke Capital, LLC v. Gross*, 2014 WL 12558852, *3 (C.D. Cal. 2014) (citing *Alkmeon Naviera, S.A. v. M/V Marina L*, 633 F.2d 789, 797-98 (9th Cir. 1980)) (finding a prejudgment interest rate of 10% per annum rate based on California Civil Code § 3289 reasonable). Here, prejudgment interest should be awarded as none of the factors weighing against granting prejudgment interest are present. Out of an abundance of caution regarding the law that is applicable to this action, Akzo Nobel seeks prejudgment interest at a rate of 7% per annum under Ga. Code Ann. § 7-4-2—as opposed to the 10% rate called for under California law.

The amount of prejudgment interest will depend on the date on which judgment is entered. As of January 6, 2022, 254 days have passed since April 27, 2021—when GMP and/or Palermo were required to return the $3,250,000.00 in unearned advanced monies upon termination. With a principal of $3,250,000.00, one year of simple interest at seven percent amounts to $227,500.00, or ~$623.29 of interest day ($3,250,000.00 x 7% ÷ 365 days). After 254 days, $158,315.07 of interest has accrued (($3,250,000.00 x 7% ÷ 365 days) x 254 days).

## V. CONCLUSION

Akzo Nobel respectfully requests that the Court enter a default judgment against Palermo awarding damages in the sum of $3,250,000.00 plus prejudgment interest at a rate of 7% per annum

under Ga. Code Ann. § 7-4-2.

Dated: January 6, 2022

Respectfully submitted,
NELSON MULLINS RILEY &
SCARBOROUGH LLP

By: */s/ Crispin L. Collins*
Crispin L. Collins

Attorneys for Plaintiff
Akzo Nobel Coatings Inc.